| | AUSA: | Sara Woodward | Telephone: | (313) 226-9180 |
|---|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Agent: | Miguel Colon | Telephone: | (313) 737-7447 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
   v.
Darren Smith

2:21-mj-30086
Judge: Unassigned,
Filed: 02-23-2021

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 2020 - Present__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Miguel.Colon*
Digitally signed by Miguel.Colon
Date: 2021.02.23 09:46:45 -05'00'

*Complainant's signature*

Miguel Colon- Special Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __February 23, 2021__

City and state: __Detroit, MI__

*Judge's signature*

Curtis Ivy, Jr. - United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Miguel A. Colon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the U.S. Department of Labor, Office of Inspector General, Office of Investigations - Labor Racketeering and Fraud (DOL-OIG/OI-LRF) and have been so employed since December 2017. I am currently assigned to the Homeland Security Investigations' Document and Benefit Fraud Task Force located in Detroit, MI. I have conducted numerous investigations involving identity theft, labor, financial, and unemployment insurance fraud schemes. I have graduated from the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC).

2. During my years at the Department of Labor, I have conducted numerous investigations into criminal violations of both Title 29 and Title 18 of the United States Code. During this time, I have been either the lead agent or supporting agent on several investigations involving criminal schemes targeting the unemployment insurance (UI) program through the filing of false or fictitious UI claims. Based on my direct personal experience with these cases, I have become familiar with the methods that criminals use to attack and exploit the UI systems as well as the

criminals' reliance on the use of email and other internet or online tools and systems to facilitate that fraud.

3.    As a result of my participation in this investigation, I submit that there is probable cause to believe that **Darren Smith** has committed federal crimes, including wire fraud (18 U.S.C. § 1343) and aggravated identity theft (18 U.S.C. § 1028A).

4.    I make this affidavit based upon personal involvement in the subject criminal investigation, including review of financial, employment, internet service provider, and utility and property records; records from the State of Michigan regarding UI claims; law enforcement surveillances; and review of information and evidence stemming from search warrants obtained and executed during the investigation of a large scale UI fraud scheme operating in Detroit, MI. I have also been provided with information from other law enforcement agents and officials, including agents and officials from the United States Secret Service (USSS) and the State of Michigan's Fraud Investigation Unit (SOM-FIU). This affidavit does not contain all of the facts developed to date in the underlying investigation and is being submitted for the purpose of establishing probable cause to secure a criminal complaint and arrest warrant.

## SUMMARY

5. Beginning in late August 2020 and continuing through the present, investigating agents, including your affiant, identified a large UI fraud ring that defrauded the States of Maryland and Michigan of at least $1,600,000 federal dollars earmarked for Pandemic Unemployment Assistance (PUA). The false claims were submitted using two Internet Protocol (IP) addresses and dozens of mailing address. The false claims resulted in the Bank of America mailing debit cards loaded with PUA funds to the subject addresses. Agents have determined that, to date, **Darren Smith** has used some of those debit cards to withdraw approximately $111,260 in UI funds via large cash withdrawals at ATMs located within the Eastern District of Michigan.

## UNEMPLOYMENT INSURANCE BACKGROUND

6. The Social Security Act of 1935 initiated the federal and state unemployment insurance system. The system provides benefits to individuals who are unemployed for reasons beyond their control. The purpose of the UI system is twofold: first, to lessen the effects of unemployment through cash payments made directly to laid-off workers, and second, to ensure that life necessities are met on a weekly basis while the worker seeks employment. In the State of Michigan, the UI system is administered by the Unemployment Insurance Agency (UIA), which is part of the State of Michigan's Department of Labor and Economic Opportunity

(DLEO). The U.S. Department of Labor funds many UIA administrative costs, including salaries, office expenses, and computer equipment.

7.     State unemployment systems and benefits are joint state and federal enterprises administered by the State Workforce Agency (SWA) of a given state and largely financed by taxes on private employers located in that state. When state unemployment benefits are exhausted, they may be supplemented by federal funds appropriated by the U.S. Department of Labor. As of the time of this application, the federal government is providing significant supplemental benefits to the states as a result of the COVID-19 pandemic.

8.     The Families First Coronavirus Response Act (FFCRA) became law on March 18, 2020, and provided additional flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was later signed into law on March 27, 2020.

9.     The CARES act further expanded the ability of states to provide unemployment insurance for many workers impacted by the COVID-19 pandemic, including workers who are not ordinarily eligible for unemployment benefits. One such program established to accomplish that end was the Federal Pandemic Unemployment Compensation (FPUC) program. The FPUC allows eligible individuals who are collecting certain UI benefits, including regular unemployment

compensation, to receive an additional $600 in federal benefits per week for weeks of unemployment ending on or before July 31, 2020. Another such program, the Pandemic Emergency Unemployment Compensation (PEUC) program, allows those who have exhausted benefits under regular unemployment compensation or other programs to receive up to 13 weeks of additional federally-funded benefits up to December 26, 2020. On December 27, 2020, the President signed legislation that extended these programs for an additional 12 weeks. Those receiving unemployment benefits will be entitled to an additional $300 for each week of unemployment until April 4, 2021. That is all to say, the recent federal legislation and programs detailed above allowed for a significant outlay of federal funds to flow to and through the states to offset the recent and historic need of the American workforce for unemployment benefits as a result of the COVID-19 pandemic, including the American workforce in the State of Michigan and in the Eastern District of Michigan. Collectively and colloquially, the funds flowing from these programs have come to be known as Pandemic Unemployment Assistance (PUA).

10. Normally (in the absence of fraud), an unemployed worker initiates a UI claim. This can be accomplished by submitting a claim in person, over the telephone, or on the Internet. Currently, the overwhelming majority of UI claims are filed online through an SWA website. In order to be eligible for UI benefits, the worker must demonstrate a certain level of earnings in several quarters

immediately preceding the application. The amount of unemployment benefits that a UI claimant might be eligible for depends on a variety of factors, including, but not limited to, the length of his or her previous employment and the amount of wages he or she earned.

11. The SWA will either approve or reject a UI claim based on the application made by the unemployed worker. If the SWA approves a UI claim, the claimant is required to re-certify the claim via telephone or Internet at various times during the life of the claim. The worker must also certify that he or she is still unemployed and actively seeking work. One way in which unemployment benefits are provided to a claimant in Michigan is through the use of a debit card, issued by the Bank of America (BOA), which is mailed to the claimant through the U.S. Postal Service (USPS). Similar debit card arrangements exist between other banks in other states. Alternatively, a worker can provide the SWA with a bank routing number and bank account in which to have their unemployment benefits directly deposited electronically. In either scenario, additional benefits are loaded electronically at intervals thereafter.

## Unemployment Insurance – Fraud Prevention

12. In an effort to prevent and otherwise inhibit fraud, the SWAs capture certain data surrounding the interaction between an individual and the UI system. Each time a claim is accessed in the system, it creates a digital footprint of sorts.

Although states utilize their own unique systems, many times the data that is collected includes the dates, times, IP address, and Media Access Control (MAC) address associated with a device accessing a claim. The SWA systems tie this information to the user-entered information captured to facilitate the claim (i.e. name, address, social security number, BOA or other bank account numbers, bank routing numbers, etc.). It is through the analysis of this data that the SWAs and investigating agents can identify fraudulent trends and tendencies associated with certain claims.

## **PROBABLE CAUSE**

13.     On or around August 18, 2020, during a review of filed PUA claims, I identified two IP addresses responsible for submitting approximately two hundred and forty (240) UI claims. As explained below, both IP addresses were associated with residential addresses in Detroit, Michigan. Of the 240 UI claims, approximately 200 claims were submitted to the State of Maryland's UI program, and approximately 40 claims were submitted to the State of Michigan's UI program. The 240 unique claims were submitted between May 7, 2020 and July 7, 2020; each claim included an individual's name and social security number.

14.     I reviewed unemployment insurance data for these 240 claims provided by the States of Maryland and Michigan. As mentioned above, what was unusual about this set of 240 claims is that two IP addresses were associated with the

claims: 73.161.65.34 (hereinafter "**IP 34**") and 76.112.149.211 (hereinafter "**IP 211**"). Between May 7, 2020 and July 7, 2020, **IP 34** submitted approximately 210 UI claims (approximately 40 to the State of Michigan, and 170 to the State of Maryland), and **IP 211** submitted approximately 30 claims (all to the State of Maryland). In total, **IP 34** caused the State of Michigan and State of Maryland to disperse $1,386,798 in UI payments, while **IP 211** caused the State of Maryland to disperse an additional $223,470 in UI payments.

15. The investigation revealed that **IP 34** and **IP 211** were controlled by Comcast, and I requested account information from Comcast. Comcast provided the requested records on or about September 21, 2020. According to the records received, both accounts were active. The service and billing address for **IP 34** was ***0 Strathmoor St., Detroit, MI, in the subscriber name of Dennis ****.[1] The service and billing address for **IP 211** was ***** Prevost St., Detroit, MI, in the subscriber name of *** Smith.[2]

16. Based on information provided by a law enforcement database, agents believe that *** Smith, from paragraph 15, is a relative of **Darren Smith**. In

---

[1] The subscriber name and billing address for **IP 34** is known to law enforcement, but not included in this public document to protect the identity of potentially uninvolved persons.

[2] The subscriber name and billing address for **IP 211** is known to law enforcement, but not included in this public document to protect the identity of potentially uninvolved persons.

addition, a commercial law enforcement database listed *** Smith as an occupant of ***9 Strathmoor St., the residence across the street from ***0 Strathmoor St.

*Fraud Indicators*

17. Based on my training and my direct experience with identity theft fraud schemes targeting the State of Michigan's Unemployment Insurance Agency, I know that the utilization of 240 distinct identities for claims (1) associated with two IP addresses (**IP 34** and **IP 211)**; (2) filed within a narrow time period (May to July 2020); (3) associated with repeating physical addresses (as set forth below); and (4) associated with similarly-structured email addresses (as set forth below); are all strong indicators of identity theft and wire fraud.

18. The Bank of America provided agents with banking information and ATM footage associated with the aforementioned UI claims, which I have reviewed. As set forth below, agents identified **Darren Smith** as an individual involved in the fraud through their analysis of open source pictures/information and surveillance footage related to the subject financial accounts.

*Email Commonalities*

19. Each of the 240 UI claims included purported user information for the claim, including name, social security number, street address, and email address. Most of the email addresses associated with the 240 UI claims were variants of similar underlying alphanumeric addresses, and some email addresses were repeated

multiple times for separate UI claims. In addition, 209 of the 240 claims used AOL email addresses. Although AOL is an active email provider, it is no longer a commonly used email provider. In my training and experience, it is highly unlikely that 209 claims, out of 240, would be filed under AOL accounts. Below, in Figure 1, is a sample of the claim data submitted by **IP 34**:

*Figure 1. Sample Selection of the subject UI Claims[3]*

| Claim State | Claim Email | Claim Month/Year | SSN Redacted | Last, First (Redacted) | Claim Mailing Address |
|---|---|---|---|---|---|
| MI | DAYSFORU81@YAHOO.COM | May-20 | XXX-XX-1271 | S___, C___ | 9334 YOSEMITE ST |
| MI | DAYSFORU81@YAHOO.COM | May-20 | XXX-XX-2411 | H___, J___ | 9334 YOSEMITE ST |
| MI | DAYSFORU81@YAHOO.COM | May-20 | XXX-XX-1263 | G___, T___ | 9334 YOSEMITE ST |
| MD | LSKL1@AOL.COM | May-20 | XXX-XX-0152 | S___, L___ | 9334 YOSEMITE ST |
| MD | PDAR1@AOL.COM | May-20 | XXX-XX-6725 | D___, P___ | 9334 YOSEMITE ST |
| MD | RD1@AOL.COM | May-20 | XXX-XX-0139 | D___, R___ | 9334 YOSEMITE ST |
| MD | A11@AOL.COM | May-20 | XXX-XX-2237 | S___, S___ | 15069 APPOLINE ST |
| MD | AAA@AOL.COM | May-20 | XXX-XX-9047 | A___, A___ | 15069 APPOLINE ST |
| MD | AB@AOL.COM | Jun-20 | XXX-XX-7101 | B___, A___ | 6735 E 7 MILE RD |
| MD | AM@AOL.COM | Jun-20 | XXX-XX-8069 | M___, A___ | 6784 E DAVISON ST |
| MD | AR@AOL.COM | Jun-20 | XXX-XX-8009 | R___, A___ | 7449 E 7 MILE RD |
| MD | AV@AOL.COM | Jun-20 | XXX-XX-2355 | V___, A___ | 7431 PENROD ST |
| MD | AY@AOL.COM | Jun-20 | XXX-XX-3407 | L___, S___ | 3245 EWALD CIR |
| MD | BB@AOL.COM | Jun-20 | XXX-XX-6118 | A___, A___ | 27732 BENNETT ST |
| MD | BB@AOL.COM | Jun-20 | XXX-XX-8180 | B___, B___ | 6735 E 7 MILE RD |
| MD | BB1@AOL.COM | May-20 | XXX-XX-0048 | B___, B___ | 16800 GILCHRIST ST |
| MD | BBG@AOL.COM | Jun-20 | XXX-XX-8195 | S___, J___ | 27732 BENNETT ST |
| MD | BC@AOL.COM | Jun-20 | XXX-XX-8036 | C___, B___ | 6784 E DAVISON ST |
| MD | BCR@AOL.COM | Jun-20 | XXX-XX-0299 | L___, R___ | 27732 BENNETT ST |
| MD | CB1@AOL.COM | Jun-20 | XXX-XX-3061 | B___, C___ | 29770 LAHSER RD |
| MD | CH@AOL.COM | Jun-20 | XXX-XX-9146 | H___, C___ | 19745 WHITCOMB ST |
| MD | CK@AOL.COM | Jun-20 | XXX-XX-9089 | K___, C___ | 12147 ROSELAWN ST |

---

[3] Your affiant received the social security numbers and names associated with the 240 UI claims. It is likely that those names and SSNs belong to victims of identity theft. Accordingly, those names and SSNs are not included in this publicly-filed affidavit.

| MD | CLC@AOL.COM | Jun-20 | XXX-XX-3444 | D___, B___ | 8539 WYOMING ST |
|----|-------------|--------|-------------|------------|------------------|
| MD | CLK@AOL.COM | Jun-20 | XXX-XX-3079 | K___, C___ | 10420 CURTIS ST |
| MD | CM1@AOL.COM | May-20 | XXX-XX-7445 | M___, C___ | 16800 GILCHRIST ST |
| MD | CN@AOL.COM | Jun-20 | XXX-XX-7071 | N___, C___ | 6735 E 7 MILE RD |
| MD | CT@AOL.COM | Jun-20 | XXX-XX-8283 | T___, C___ | 6735 E 7 MILE RD |
| MD | CXZ@AOL.COM | Jun-20 | XXX-XX-3451 | W___, H___ | 8539 WYOMING ST |

20.     In addition, the residential addresses associated with the majority of the 240 UI claims were located in Detroit, Michigan. For **IP 34's** 210 claims, approximately 154 claims had addresses in Detroit, Michigan, and approximately 55 claims had addresses in Metro Detroit (including Hamtramck, Southfield, and Livonia).

*Identification of Darren Smith*

21.     Your affiant obtained records from the Bank of America for the cards issued in response to the 240 UI claims. By reviewing these records, your affiant was able to identify cash withdrawals from the BOA accounts. Your affiant then requested information from the financial institutions associated with the cash withdrawals, including surveillance footage of the individual withdrawing cash from the accounts. To date, your affiant has reviewed surveillance footage for approximately 30 cash withdrawals from UI accounts established by **IP 34** or **IP 211**. All of the cash withdrawals appear to have been conducted by the same person, **Darren Smith.**

22. A copy of **Darren Smith's** booking photo retrieved from the National Law Enforcement Telecommunications Systems (NLETS) appears below in Figure 2.

*Figure 2. Smith's booking photo.*



23. The pictures below are several ATM surveillance photos taken between May and June 2020 relating to financial transactions on UI debit cards related to the scheme. None of the financial transactions or cards associated with the images below are in the name of **Darren Smith.** Instead, as set forth below, the cards are all in the names of other individuals.





*UI Account in Victim J.F.'s Name*

24.     According to records provided by the Michigan Unemployment Insurance Agency (MUIA), on or around May 14, 2020, a UI claim was submitted over the Internet via **IP 34** in J.F.'s name. On or around May 15, 2020, the MUIA approved the claim and mailed a determination letter and a BOA UI debit card ending in 5613 in J.F.'s name to the address listed in J.F.'s UI application, **21541 Pembroke Ave.,** Detroit, MI, via the USPS. Between May 19, 2020 and May 20, 2020, the

MUIA deposited $5,480 into the BOA UI debit account established by the MUIA in J.F.'s name.

25. On May 25, 2020, an individual withdrew cash from J.F.'s BOA UI debit account using a People Drive Credit Union ATM in Southfield, Michigan. People Drive Credit Union provided agents with ATM surveillance images for this withdrawal. Based on my review of the ATM surveillance images and **Darren Smith's** booking photo, I believe that the individual in the ATM surveillance images withdrawing money from the UI account was **Darren Smith**.

*UI Account in Victim J.D.'s Name*

26. According to records provided by the Maryland Department of Labor (MDOL), on or around May 15, 2020, a UI claim was submitted over the Internet via **IP 34** in J.D.'s name. On or around May 16, 2020, the MDOL approved the claim and mailed a determination letter and a BOA UI debit card ending in 2307 in J.D.'s name to the address listed in J.D.'s UI application, **21541 Pembroke Ave.,** Detroit, MI, via the USPS. Between May 16, 2020 and June 30, 2020, the MDOL deposited $10,374 into the BOA UI debit account established by the MDOL in J.D.'s name.

27. Between May 25, 2020 and June 25, 2020, an individual made multiple cash withdrawals from J.D.'s BOA UI debit account using a People Drive Credit Union ATM in Southfield, Michigan. People Drive Credit Union provided agents with

ATM surveillance images for these withdrawals. Based on my review of the ATM surveillance images and **Darren Smith's** booking photo, I believe that the individual in the ATM surveillance images withdrawing money from the UI account was **Darren Smith**.

*UI Account in Victim L.B.'s Name*

28.     According to records provided by the MDOL, on or around May 15, 2020, a UI claim was submitted over the Internet via **IP 34** in L.B.'s name. On or around May 16, 2020, the MDOL approved the claim and mailed a determination letter and a BOA UI debit card ending in 5413 in L.B.'s name to the address listed in L.B.'s UI application, **21541 Pembroke Ave.,** Detroit, MI, via the USPS. Between May 15, 2020 and June 30, 2020, the MDOL deposited $13,390 into the BOA UI debit account established by the MDOL in L.B.'s name.

29.     On June 25, 2020, an individual made a cash withdrawal from L.B.'s BOA UI debit account using a Fifth Third Bank ATM in Detroit, Michigan. Fifth Third Bank provided agents with ATM surveillance images for this withdrawal. Based on my review of the ATM surveillance images and **Darren Smith's** booking photo, I believe that the individual in the ATM surveillance images withdrawing money from the UI account was **Darren Smith**.

*UI Account in Victim P.D.'s Name*

30.    According to records provided by the MDOL, on or around May 22, 2020, a UI claim was submitted over the Internet via **IP 34** in P.D.'s name. On or around May 23, 2020, the MDOL approved the claim and mailed a determination letter and a BOA UI debit card ending in 2523 in P.D.'s name to the address listed in P.D.'s UI application, **9334 Yosemite St**., Detroit, MI, via the USPS. Between May 23, 2020 and June 16, 2020, the MDOL deposited $8,778 into the BOA UI debit account established by the MDOL in P.D.'s name.

31.    Your affiant queried the names and SSNs of 65 "claimants" in a law enforcement database, to include the aforementioned victims. Your affiant determined that in every instance, the PII submitted to file the fraudulent UI claims were that of actual individuals and likely victims of identity theft.

32.    A review of banking transactions provided by the BOA for victim P.D. revealed multiple online purchases from Walmart using the UI debit card ending 2523. On October 2, 2020, agents obtained the transactional records related to the charges from Walmart Global Investigations, which I have reviewed. The records indicated that the delivery address related to the online order was **9334 Yosemite St.**, Detroit, MI 48204. The records also indicated that the name on the order was Jamie Smith. Agents believe that Jamie Smith and Darren Smith are related based on information provided by a law enforcement database. In addition, claim data provided by the MUIA and the MDOL indicated that the address **9334 Yosemite**

**St**. was used in 16 different fraudulent UI claims submitted via both **IP 34** and **IP 211**, including Jamie Smith's claim.

## SUMMARY

33.	Your affiant has reviewed the activity detailed above and immediately recognizes it as consistent with a large-scale UI fraud scheme perpetrated by **Darren Smith** and other co-conspirators currently unknown to law enforcement. The basis for my statement derives from the information below:

    a.	During my career at DOL, I have worked several UI fraud cases involving multiple fraudsters, and I am familiar with how criminals can manipulate SWA's UI system to obtain fraudulent benefits.

    b.	Within the last 30 days, I have had conversations with members of the law enforcement intelligence community concerning the rampant levels of PUA fraud occurring all over the country. Those officials have discussed with me various scams and schemes that they are tracking involving PUA, including the possibility of insiders facilitating UI fraud schemes and schemes similar to this. Additionally, the FBI has advised that there are significant criminal resources and "guides" available through criminal networks on how to defraud various states, including the States of Michigan and Maryland, of PUA benefits. Many of these schemes involve coordinated efforts by a group of individuals who are communicating using electronic devices and social media.

34. In addition, there is probable cause to believe that an interstate wire communication was used to further the scheme to defraud. Specifically, the fraudulent claims in this investigation were submitted via the internet using **IP addresses 34** and **211**.

## CONCLUSION

36. Based on the forgoing, there is probable cause to believe that **Darren Smith** has committed federal crimes, including wire fraud (18 U.S.C. § 1343) and aggravated identity theft (18 U.S.C. § 1028A), in connection with a scheme to defraud the federal/state unemployment insurance program and obtain unemployment benefits by means of false and fraudulent pretenses and representations.

Respectfully submitted,

_____
Miguel Colon
Special Agent
U.S. Department of Labor –
Office of Inspector General

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
Honorable Curtis Ivy, Jr.
United States Magistrate Judge

Date:   February 23, 2021